**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**JOSEPH RANDOLPH MAYS,**

        **Plaintiff,**

**v.**                                 **CIVIL ACTION NO. 3:20-CV-181**
                                              **(GROH)**

**RICHARD HUDGINS, Warden,**
**RICK WILSON,**
**BRENT MILLER,**
**D.J. HARMAN,**
**ALICIA WILSON,**
**IAN CONNORS,**
**EDDIE ANDERSON,**
**A.SLIGAR,**
**JENNIFER SAAD,**
**JOHN DOE,**
**R. CLEM,**
**OFFICER MASSEY,**
**JOHN / JANE DOES**
**UNITED STATES OF AMERICA,**

        **Defendants.**

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

On September 22, 2020, the *pro se* Plaintiff, who is a federal prisoner incarcerated at Gilmer FCI, in Glenville, West Virginia, initiated this case by filing an action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), claiming his Constitutional rights were violated.  ECF No. 1.[1]

Defendants filed a motion to dismiss, or for summary judgment, a memorandum, and exhibits in support thereof on February 26, 2021.  ECF Nos. 45, 46, 46-1, 46-2.

---

[1]   All CM/ECF numbers cited herein are from the instant case, 3:20-CV-181, unless otherwise noted.

Plaintiff filed a response to the motion to dismiss or for summary judgment on May 17, 2021.  ECF No. 70.  Plaintiff has also filed a number of other motions for the Court's consideration.  ECF Nos. 36, 62, 64, 66, 67.  On June 1, 2021, Defendants filed a motion to strike Plaintiff's response to their motion to dismiss.  ECF No. 79.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2.

## II.  FACTUAL AND PROCEDURAL HISTORY

In his complaint Plaintiff names as Defendants: various correctional officers, safety department employees, medical professionals, and wardens at Gilmer FCI; administrators of the Bureau of Prisons at the Mid-Atlantic Regional Office and the National Inmate Appeals Office; John Doe, Compound Control Officer and separately, "John / Jane Does (if evidence becomes available)".  ECF No. 1 at 1 – 8.

Plaintiff raises three grounds for relief, claiming that Defendants: (1) were deliberately indifferent to Plaintiff's need for clean drinking water, in violation of the Eighth Amendment; (2) subjected Plaintiff to cruel and unusual punishment by failing to improve the quality of the water at Gilmer FCI; and (3) that Defendants conspired to interfere with Plaintiff's civil rights by attempting to delay and refusing to respond to his grievances at the regional and central offices.  Id. at 49 – 50.

Plaintiff claims that all these alleged violations of his rights caused him stomach and abdominal pain.  Id. at 55.  Plaintiff further asserts that these violations may have caused the following further or future damages: (1) "possible damage to [his] stomach lining"; (2) that he "may have [ ] been exposed to h. pylori bacteria, which, if untreated can lead to stomach cancer"; and (3) that a cyst on Plaintiff's left kidney "may be the result of contaminated water."  Id.

Plaintiff does not seek any monetary damages.  Id.  Instead, Plaintiff requests the Court order: (1) the Defendants to test the water in Plaintiff's cell; (2) the Defendants to provide bottled water to "inmates until the water in the housing units tests 'safe'";  (3). the Defendants to perform regular inspection and testing of housing unit water; and (4) the Defendants to send Plaintiff to an outside medical provider to obtain evidence to support his claims of injury.  Id.

On December 21, 2020, Plaintiff filed a motion styled "Motion to Compel" which asked the Court to require Defendants to provide him bottled water and "provide photographic and preferably video evidence of the problem, as stated, in [Plaintiff's] cell." ECF No. 36 at 3.

Defendants argue in their motion to dismiss that: (1) the Court lacks personal jurisdiction over Connors; (2) Plaintiff fails to state a cognizable Bivens claim; (3) supervisory Defendants are entitled to immunity; (4) Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 8; (5) Plaintiff fails to state a claim upon which relief can be granted as to Defendant Clem; (6) Plaintiff fails to demonstrate deliberate indifference to his medical conditions, as required for Bivens liability; (7) Plaintiff's requested relief is not authorized in a Bivens action; and (8) Defendants are entitled to qualified immunity.  ECF No. 46.

On May 17, 2021, Plaintiff filed a 65-page single-spaced handwritten response to Defendants' motion to dismiss [ECF No. 70], and several other motions [ECF Nos. 62, 64, 66, 67] for various relief: (1) to strike defamatory language [ECF No. 62]; (2) for leave to file excess pages [ECF No. 64]; (3) to compel [ECF No. 66]; and (4) for joinder [ECF No. 67].

On June 1, 2021, Defendants filed a response to Plaintiff's motions to strike [ECF No. 62], compel [ECF No. 66] and for joinder [ECF No. 67].  ECF No. 78.  Defendants argued that: (1) Plaintiff's arguments are unfounded in fact or law, that Plaintiff's medical chart documents that at least one treating physician suspected Plaintiff suffered from paranoia; (2) that Defendants should not be compelled to provide current addresses for unserved defendants based on the holdings of <u>Puett v. Blandford</u>, 912 F.2d 270, 275 (9th Cir. 1990) and <u>Patel v. Moron</u>, 897 F.Supp. 2d 389, 403 (E.D.N.C. 2012); and (3) that joinder with 3:20-CV-199, another Bivens claim based on deprivation of adequate medical care, is premature.  <u>Id.</u>

Further, Defendants filed a motion [ECF No. 79] in opposition to Plaintiff's response [ECF No. 70] to the motion to dismiss.  Defendants argue that Plaintiff's response does not comply with Local Rule of Prisoner Litigation Procedure (LR PL P) 11(b) which provides that, "[m]emoranda filed in response to a motion shall not exceed twenty-five (25) pages."  ECF No. 79 at 1.  Further, Defendants cite to LR PL P 11 which provides that, "**Failure to comply with the page limitations set forth in these Rules will, upon Court order, result in the entire document being stricken from the docket.**"  (Emphasis in original).  Defendants argue that Plaintiff's articulated grounds to exceed the page limitation are inadequate to support exceeding the page limit by forty pages, and that Plaintiff's reference to 135 exhibits which were not provided to defense counsel constitute an excessive deviation from the filing limitations imposed by the Local Rules.  <u>Id.</u> at 2 – 3.

### III.  LEGAL STANDARD

#### A.     Pro Se Litigants

Because Plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or

malicious.  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

Courts must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[2] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

**B.    Civil Rights Actions Under Bivens**

In Bivens, supra, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents.  In FDIC v. Meyer, 510 U.S. 471, 484 -

---

[2]  The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

86 (1994), the Court held that federal agencies may not be held liable in a <u>Bivens</u> claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts."   <u>Id.</u>   <u>See</u> <u>Correctional Services Corp. v.</u> <u>Malesko</u>, 534 U.S. 61, 71 (2001).

Pursuant to <u>Bivens</u>, an individual federal agent may be found liable for actions "in excess of the authority delegated to him."   403 U.S. at 397.   "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."   <u>Corr. Servs.</u> <u>Corp. v. Malesko</u>, 534 U.S. 61, 70 (2001).   The Supreme Court further explained in <u>Malesko</u>:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual.

534 U.S. at 72.   Further, in a <u>Bivens</u> case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights.   <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2nd Cir. 1994); <u>See</u> <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims[3] [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676

---

[3]   The Court notes that <u>Bivens</u> actions and § 1983 actions are both civil rights actions, and that <u>Bivens</u> actions regarding deprivation of civil rights are the federal counterpart to state actions authorized by 42 U.S.C. § 1983.

(2009).  "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Id.  "A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."  Ziglar v. Abassi, 137 S.Ct. 1843, 1860 (2017).

The Fourth Circuit has previously:

> set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), *cert. denied,* 513 U.S. 813 (1994); (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (overruled in part on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994)).  The Court further explained that, "[t]o satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff."  Shaw, supra, citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984).

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses"; however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof."  Shaw, 13 F.3d at 799.  "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." Id.

### C.   Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that  the plaintiff can prove  no set of facts  in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face."  Id. at 555, 570.  In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.  Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### D.    Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However,

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." 477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id.   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than

10

encourage mere speculation.  Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).  See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.  ANALYSIS

Although Plaintiff has alleged three claims for relief, the Court views those claims as essentially raising two issues: (1) two Eighth Amendment claims of cruel and unusual punishment related to his conditions of confinement and allegations of denial of medical care; and (2) a Fourteenth Amendment claim of due process and equal protection violations related to an alleged delay in the disposition of administrative grievances.

However, before considering those claims, the Court first considers the propriety of jurisdiction for these claims, and immunity for various defendants.

### A.    Lack of Jurisdiction Over Harmon, Saad, Sligar and Hudgins Based on Plaintiff's Failure to Serve those Defendants

Defendants argue this Court does not have jurisdiction over three individuals upon

whom Plaintiff failed to serve process: Jennifer Saad (Saad)[4], A. Sligar (Sligar), and D.J. Harman[5] (Harmon).  ECF No. 46 at 2, n. 1, n. 2, n. 3.  The Court takes judicial notice that Richard Hudgins (Hudgins) also was not served process.  A review of the docket shows that summonses were returned as unexecuted as to: (1) Saad on October 27, 2020 [ECF No. 17]; (2) Sligar on October 27, 2020 [ECF No. 18]; (3) Harmon on March 31, 2021 [ECF No. 57]; and (4) Hudgins on April 5, 2021 [ECF No. 58].

Rule 4 of the Federal Rules of Civil Procedure provides, "If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  It is clear that Plaintiff failed to serve Saad, Sligar, Harmon or Hudgins, and accordingly, the undersigned recommends that Saad, Sligar, Harmon and Hudgins be dismissed from this action without prejudice.

## B.    Lack of Personal Jurisdiction Over Defendant Connors

The complaint names as a Defendant Ian Connors (Connors), who is an employee of the BOP Central Office in Washington, D.C.   ECF No. 1 at 2, 4, 5.   In their memorandum, Defendants argue that West Virginia is an improper venue to pursue any Defendant whose actions occurred outside of West Virginia.   ECF No. 46 at 11 – 12.

For a district court to assert personal jurisdiction over a nonresident defendant, two

---

[4] "In a *Bivens* suit, there is no *respondeat superior* liability.  Instead, liability is personal, based upon each defendant's own constitutional violations."  Trulock v. Freeh, 275 F.3d 391, 402 (2001) (internal citation omitted). Accordingly, to the extent that Plaintiff attempts to assert claims against any administrative superior or warden, there is no liability for such defendants.

[5] Although Plaintiff identified Defendant as D.J. Harman, counsel for the Defendants identified this Defendant as D. J. Harmon and the Court uses this spelling throughout.

conditions must be satisfied.  "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements."  Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).  The West Virginia long-arm statute is contained in W.Va. Code § 56-3-33.[6]

The Fourth Circuit has stated that:

> Because the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction.  Rather the statutory inquiry necessarily merges with the Constitutional inquiry. Accordingly, our inquiry centers on whether exercising personal jurisdiction over [a defendant] is consistent with the Due Process Clause.

---

[6] This section provides in part as follows:

(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the Secretary of State, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising out of or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state: Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Having an interest in, using or possessing real property in this state; or
(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her.

In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997) (internal citations omitted).  To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interest here would not, "[o]ffend traditional notions of fair play and substantial justice."  Id. at 628, quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  To establish those minimum contacts necessary to confer jurisdiction, "it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing International Shoe). The Fourth Circuit has recognized that such minimum contact must be "purposeful."  In re Celotex, 124 F.3d at 628, quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).  "Jurisdiction is proper [ ] where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." Burger King Corp., 471 U.S. at 475.

"[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Walden v. Fiore, 571 U.S. 277, 285 (2014).  In Walden, the Supreme Court found that a Georgia police officer lacked the minimal contacts with Nevada required for Nevada to exercise personal jurisdiction over the officer who was accused of drafting a false probable cause affidavit to support the forfeiture of funds seized during a search at a Georgia airport.  Id. at 277.

Plaintiff has failed to assert any specific contact by Connors from Washington, D.C. with the State of West Virginia, other than being "responsible for monitoring the administrative remedy program" which may have resulted in disposition of administrative

grievances which were then transmitted to and read by federal officials in West Virginia.[7] Plaintiff asserts that Connors "refused to come" to his cell to view the problem he complains about.  ECF No. 1 at 50.  It is clear that Connors is a non-resident of West Virginia who has not personally engaged, or by authorized agents engaged, in any one or more of the acts specified in subdivisions (1) through (7) of subparagraph (a) of the West Virginia long-arm statute, W.Va. Code § 56-3-33.  Accordingly, based on the information contained in the complaint, the Court cannot exercise personal jurisdiction over Connors, because he did not engage in the specified acts under the long-arm statute, and the actions of Connors, which Plaintiff alleges in support of his claims, took place outside of West Virginia.  Therefore, the complaint should be dismissed without prejudice from this jurisdiction for lack of personal jurisdiction as to Connors.

### C.     John Doe, Compound Control Officer and John / Jane Does Should be Dismissed for Failure to State a Claim

Plaintiff has failed to provide the names of parties, as required by Federal Rule of Civil Procedure Rule 10(a), which requires that the "title of a complaint must name all the parties."  Second, Plaintiff is required to provide, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 55 (quoting Fed. R. Civ. P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Plaintiff's complaint identifies "John Doe, Compound Control Officer" at FCI Gilmer as a Defendant [ECF No. 1 at 7], and "John / Jane Does (as evidence become available)" [Id. at 8], however, it fails to name an individual defendant whom Plaintiff

---

[7]  Plaintiff's assertion that Connors engaged in a conspiracy [ECF No. 1 at 50] with Defendants Clem and Harmon is just that: an assertion.  Plaintiff cites to no facts to support his broad claim.

claims violated his civil rights.

Accordingly, because Plaintiff has failed to name all the parties, and to make a short and plain statement of the claim showing that he is entitled to relief from "John Doe, Compound Control Officer" and "John / Jane Does", as required by Federal Rule of Civil Procedure 10(a), this matter should be dismissed without prejudice as to "John Doe, Compound Control Officer" and "John / Jane Does".

### D.    United States of America is not a Proper Party to a Bivens Action

Sovereign immunity shields the Federal Government and its agencies from suit, absent a waiver. FDIC v. Meyer, 510 U.S. 471, 475 (1994). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." Id. Further, in FDIC v. Meyer, the Court held that Bivens claims may not be brought against a federal agency, and that federal agencies may not be held liable in a Bivens claim. The United States of America was named[8] as an interested party in this Bivens action. ECF No. 26. However, pursuant to the clear holding of FDIC v. Meyer, the United States is not a proper defendant in a Bivens action. Accordingly, the United States of America merits dismissal from this action with prejudice.

### E.    Immunity of Defendants Alicia Wilson and Eddie Anderson

Although Plaintiff has made specific allegations against Alicia Wilson (A. Wilson), and Eddie Anderson (Anderson), A. Wilson and Anderson are nonetheless immune from suit under a Bivens action. The Supreme Court has held that U.S. Public Health Service

---

[8]  The United States of America was added as an interested party when Defendants filed a pleading which asserts the following: "Comes now, the United States of America, an interested party, . . . by special limited appearance, and pursuant to Fed. R. Civ. P. 25(a)(1), and hereby suggests upon the record the death of named defendant Darrin Harmon. Regional Director Harmon passed away on June 16, 2020. A copy of his online obituary is appended hereto as Exhibit A."

(PHS) personnel charged with constitutional violations arising out of their official duties must be sued for damages for harms caused in the course of their employment, under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680.  Hui v. Castaneda, 559 U.S. 799, 801–02 (2010).  The Court further concluded that based on the plain language of 42 U.S.C. § 233(a), "that PHS officers and employees are not personally subject to *Bivens* actions for harms arising out of such conduct."  Id.

Accompanying the motion to dismiss, is a declaration by Anderson that he is a physician at FCI Gilmer and is employed by the United States Public Health Service.  ECF No. 49 at 2.  Additionally, Plaintiff's complaint appears to acknowledge Anderson's status as a PHS employee, based on Plaintiff's identification of Anderson as "Clinical Director, Physician" at "Health Service, Federal Correctional Institution Gilmer".  ECF No. 1 at 6.

As to Defendant A. Wilson, she has not presented the Court with a declaration that she is a physician assistant at FCI Gilmer who is employed by the United States Public Health Service.  Nonetheless, Plaintiff's complaint appears to acknowledge A. Wilson's status as a PHS employee, based on Plaintiff's identification of A. Wilson as "Physician Assistant" at "Health Service, Federal Correctional Institution Gilmer".  ECF No. 1 at 4.

Accordingly, based on their status as PHS employees, and pursuant to the holding of Hui v. Castaneda, Anderson and A. Wilson are immune from suit in a Bivens action.  Thus, Plaintiff has failed to state a claim upon which relief may be granted as to Anderson and A. Wilson and those defendants should be dismissed with prejudice.

### F.    Failure to State a Claim Against Defendants R. Wilson, Miller, Clem, and Massey

In a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights.  Wright v. Smith, 21 F.3d 496, 501 (2nd Cir.

1994); See Colburn v. Upper Darby Township, 838F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

Plaintiff makes the following allegations against Rick Wilson (R. Wilson) who is an environmental and safety compliance administrator at FCI Gilmer, Brent Miller (Miller) who works in the Safety Department at FCI Gilmer, R. Clem (Clem) who is a Unit Manager at FCI Gilmer, and Officer Massey (Massey) who is a correctional officer at FCI Gilmer. According to the Plaintiff: (1) Wilson is "responsible for taking prompt action to assure that hazardous conditions are eliminated" [ECF No. 1 at 3]; (2) Miller "is responsible for monitoring the prison sewer system to include flushing it. . . [and] for monitoring the water quality of the institution" [Id. at 4]; (3) Clem is "responsible for ensuring that inmate notices . . . are printed out and delivered daily to inmates" [Id. at 7]; (4) Massey is "responsible for the transport of the Plaintiff . . . between FCI Gilmer and community-based medical care providers [who] also has a duty of care to all inmates" [Id. at 8]; (5) R. Wilson refused to test the water in Plaintiff's cells [Id. at 49]; (6) R. Wilson and Massey refused to go to Plaintiff's cell to personally inspect the problem [Id. at 50]; (7) R. Wilson refused to schedule an endoscopic exam for Plaintiff to verify the source of his stomach pain [Id.]; (8) R. Wilson and Miller were aware of Plaintiff's complaints about pain and knew that their acts created hazardous conditions [Id.]; (9) Clem conspired with other Defendants to delay Plaintiff [Id.]; (10) Massey conspired with other Defendants when he defended the water quality actions taken by the Warden [Id.]; (11) R. Wilson prepared a response to an administrative grievance filed by Plaintiff, which response stated that the water at FCI

Gilmer was tested by the City of Glenville, West Virginia, and the water is further monitored by the Gilmer County Public Service District [Id. at 51]; (12) Massey "confronted" Plaintiff after Plaintiff submitted to a procedure which required the use of anesthesia[9] [Id.]; (13) R. Wilson stated the City of Glenville has a contingency plan to notify FCI Gilmer if the city's water quality became unsafe to drink [Id.]; (14) R. Wilson stated that in the event the public water became unsafe to drink, that FCI Gilmer would notify the inmate population and provide bottled water [Id.]; (15) R. Wilson and Massey claim the drinking water at FCI Gilmer is safe [Id.]; (16) Miller failed to properly flush the sewer system, thereby contaminating the drinking water, and was deliberately indifferent to Plaintiff's need for clean water [Id. at 54]; and (17) Clem was deliberately indifferent to Plaintiff's need for clean water [Id.].

Plaintiff does not claim that he suffered any specific damages as a result of these alleged actions, but instead broadly claims that he suffers "stomach/abdominal pain (severe at times) after drinking the water." ECF No. 1 at 55. As to other alleged injuries, Plaintiff states that he may have "**possible** damages to [his] stomach due to **possible** exposure to excessive [contaminants]." Id. (emphasis added). Further Plaintiff asserts that he "**may have** also been exposed to h. pylori bacteria, **which if untreated** can lead to stomach cancer." Id. (emphasis added).

### 1.    Failure to State a Claim as to Potential or Possible Damages

The Prison Litigation Reform Act (PLRA) of 1996, placed an important limitation upon all actions arising from incarceration, requiring proof of physical injury arising from

---

[9]    Plaintiff alleges, "Defendant Massey confronted the Plaintiff, on 1-27-2020, at St. Joseph's Hospital, after he came out from under the anesthesia, about his report, to the nurses, to consider the possibility of the water at the institution causing his stomach (abdominal) pain so they could be informed and make a proper diagnosis." ECF No. 1 at 52.

the allegedly unconstitutional condition.   42 U.S.C. § 1997e(e).   See Munn Bey v.
Department of Corrections, 839 F.Supp.2d 1 (D.D.C. 2011).

The Supreme Court has recently addressed two related doctrines of justiciability
which each originate in the case-or-controversy requirement of Article III:

> First, a plaintiff must demonstrate standing, including
> "an injury that is concrete, particularized, and imminent rather
> than conjectural or hypothetical."  Second, the case must be
> "ripe"—not dependent on "contingent future events that may
> not occur as anticipated, or indeed may not occur at all."

Trump v. New York, 141 S. Ct. 530, 535 (2020) See DaimlerChrysler Corp. v. Cuno, 547
U.S. 332, 352 (2006); Carney v. Adams, ante, at 6, — U.S. —, —, 141 S.Ct. 493, 2020
WL 7250101 (2020); Texas v. United States, 523 U.S. 296, 300 (1998).  In Trump v. New
York, the Court found the "case is riddled with contingencies and speculation that impede
judicial review."  141 S. Ct. 530, 535.

Similarly, here, Plaintiff's allegations of potential or possible future injury seem so
contingent and speculative as to completely impede judicial review.   Accordingly, it
appears that Plaintiff's claims fail to state a cause of action because Plaintiff's claims are
of possible damages, possible exposure, and the potential to develop future illness if a
conjectural bacterial infection remains untreated.

### 2.    Failure to State a Claim as to Alleged Stomach or Abdominal Pain

Plaintiff claims that he suffered stomach or abdominal pain[10] after drinking

---

[10]   The Court notes that Defendants submitted more than 800 pages of Plaintiff's medical records
to demonstrate his history of complaints and treatment.   ECF Nos 47-1, 47-2, 47-3, 47-4.   Further,
Defendants summarized Plaintiff's substantial history of stomach pain and treatment, including a report
from October 28, 2016, when Plaintiff was incarcerated at Oklahoma City FTC prior to his transfer to FCI
Gilmer.  ECF No. 46 at 3 – 10.  The Oklahoma City FTC medical records state that Plaintiff "presented to
medical sick call with [complaint] of abdominal pain [for] 3 days.   Worse after eating.   Confirms upper
abdominal discomfort, dyspepsia, belching, and bloating. . . . Has used omeprazole in the past and has
helped with discomfort."  ECF No. 47-1 at 87 – 88.

allegedly contaminated water at FCI Gilmer.  Without addressing whether Plaintiff states a claim upon which relief can be granted as to Plaintiff's alleged stomach pain, Plaintiff fails to seek relief which is authorized in <u>Bivens</u> actions.

Plaintiff does not seek monetary damages, but instead requests the Court order: (1) the Defendants to test the water in Plaintiff's cell; (2) the Defendants to provide bottled water to "inmates until the water in the housing units tests 'safe'";  (3). the Defendants to perform regular inspection and testing of housing unit water; and (4) the Defendants to send Plaintiff to an outside medical provider to obtain evidence to support his claims of injury.  <u>Id.</u>

The undersigned recognizes that in these requests for relief, Plaintiff appears to be seeking mandamus relief in the form of an order by this Court which directs Defendants to take affirmative action.  ECF No. 1 at 55.  However, this action filed pursuant to <u>Bivens</u>, is an improper vehicle to obtain such relief.  Although Plaintiff asserts a <u>Bivens</u> claim related to his alleged stomach and abdominal pain and presents exhibits to support his additional requests for relief, those requests for relief are not cognizable in a <u>Bivens</u> action.  Accordingly, because Plaintiff can prove no set of facts which would entitle him to mandamus relief in a <u>Bivens</u> proceeding, he fails to state a claim upon which relief may be granted as to the request to have the Court order various water testing, and medical treatment.

Notwithstanding the deficiencies addressed above, the Court addresses Plaintiff's failure to meet the requirements to maintain a <u>Bivens</u> case against R. Wilson, Miller, Clem, and Massey.  Plaintiff failed to specify the acts taken by each defendant which violate his Constitutional rights, and to show that those actions caused him a physical injury.  To the

extent that Plaintiff alleges that R. Wilson, Miller, Clem, and Massey were deliberately indifferent to his medical needs, such a claim would be a violation of the Eighth Amendment.   Other claims about drinking water would be a violation of the Eighth Amendment based on unconstitutional conditions of confinement.

Plaintiff claims that R. Wilson: (1) is responsible to prevent hazardous conditions at FCI Gilmer; (2) refused to test the water in Plaintiff's cells; (3) refused to personally inspect the problem in Plaintiff's cells; (4) refused to schedule an appointment with a medical specialist to identify the cause of Plaintiff's stomach pain; (5) knew about Plaintiff's complaints and that his acts created hazardous conditions; and (6) prepared a response to an administrative grievance filed by Plaintiff, which stated (a) the water at FCI Gilmer is tested and monitored by the City of Glenville, West Virginia, and the Gilmer County Public Service District; (b) the City of Glenville has a contingency plan to notify FCI Gilmer if the city's water quality became unsafe to drink; (c) stated FCI Gilmer would notify the inmate population and provide bottled water if  the public water became unsafe to drink; and (d) claims the drinking water at FCI Gilmer is safe.   Only one of those claims relates to inadequate medical treatment pursuant to the Eighth Amendment: that R. Wilson was deliberately indifferent to Plaintiff's serious medical condition, his alleged stomach or abdominal pain.   The remaining claims appear to establish a cruel and unusual punishment claim as to failure to provide Plaintiff with the "minimal civilized measure of life's necessities."  As discussed above, Plaintiff complained of abdominal pain on October 28, 2016, prior to being transferred to FCI Gilmer.  Plaintiff has failed to prove he suffered any physical injury or abdominal pain which arose from the allegedly unconstitutional treatment or condition allegedly committed by R. Wilson.

Plaintiff claims that Miller: (1) is responsible for the safety and maintenance of the prison sewer and monitoring the water quality of the institution; (2) knew about Plaintiff's complaints and that his acts created hazardous conditions; (3) contaminated the drinking water by failing to properly flush the sewer system; and (4) was deliberately indifferent to Plaintiff's need for clean water.  Again, Plaintiff appears to make an Eighth Amendment arguments about Plaintiff's need for the minimal civilized measure of life's necessities. Despite Plaintiff's use of the phrase "deliberate indifference" in regard to Miller's actions, he uses that phrase in relation to the need for clean drinking water, not as to serious medical condition.  Again, Plaintiff has failed to prove he suffered a physical injury arising from the allegedly unconstitutional treatment or condition allegedly committed by Miller.

Plaintiff claims that Clem: (1) is responsible for ensuring administrative documents are provided to inmates; (2) conspired with other Defendants to "delay" Plaintiff, although Plaintiff fails to allege how Clem delayed him, or what actions by Plaintiff were delayed by Clem[11]; and (3) was deliberately indifferent to Plaintiff's need for clean water.  As to the first two claims against Clem, neither appears to state a claim upon which relief can be granted.  As to the third claim against Clem, similar to the claims raised against Miller, Plaintiff appears to make an Eighth Amendment argument about Plaintiff's need for clean drinking water as one of the minimal civilized measure of life's necessities, not as to a claim of denial of medical care related to a serious medical condition.  However, Plaintiff has failed to prove he suffered a physical injury arising from the allegedly unconstitutional treatment or condition allegedly committed by Clem.

Finally, as to Massey, Plaintiff claims he: (1) is responsible for transporting Plaintiff

---

[11]  Although it is unclear, it appears that Plaintiff intends to allege that Clem conspired to delay the disposition of administrative grievance(s).  ECF No. 1 at 50.

to outside medical care providers; (2) had a duty of care to all inmates; (3) refused to personally inspect the problem in Plaintiff's cell; (4) conspired with other Defendants when he defended the water quality actions taken by the Warden; (5) confronted Plaintiff after Plaintiff submitted to a procedure which required the use of anesthesia; and (6) claimed the drinking water at FCI Gilmer is safe.  Again, the claims against Massey appear to be Eighth Amendment claims related to denial of proper medical care and conditions of confinement related to the safety of FCI Gilmer's drinking water.  As to Clem, Plaintiff again has failed to prove he suffered a physical injury arising from the allegedly unconstitutional treatment or condition allegedly committed by Clem.

### 3.    Failure to State a Claim as to Alleged Due Process Violation

Plaintiff alleges that Defendants conspired to violate his civil rights by attempting to deny him timely responses to his grievances filed at the regional and central offices. ECF No. 1 at 50.  However, Plaintiff makes specific allegations only as to Clem and Massey.  Plaintiff claims that Clem conspired to delay Plaintiff, and that Massey "conspired to interfere by defending the warden . . . at the hospital on [January] 27, 2020." Id.  Both of those assertions fail to meet the requirements to provide, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Rather, Plaintiff's claims are so generalized that they fail to provide notice to Clem or Massey as to the actions which they should defend against.  Even the claim related to Massey which provides a date and location where an alleged claim arose, fails to provide sufficient detail to assert a claim.  Moreover, plaintiff has failed to demonstrate a physical injury as to these allegations against Clem or Massey.

Accordingly, Plaintiff has failed to state a claim against R. Wilson, Miller, Clem and Massey, and those Defendant merit dismissal from this action with prejudice.

### G.    Plaintiff's Response in Opposition to Defendants' Motion to Dismiss

Plaintiff's 65-page response styled, "Motion in Opposition to Defendants' Motion to Dismiss" filed on May 17, 2021, is a handwritten document that does not comply with the Local Rules of Prisoner Litigation Procedure.

LR PL P 3.4(a) provides that "*Pro se* petitions, application, complaints and motions to vacate or modify sentences shall be in English and typed or legibly printed on the Court-approved forms."  LR PL P 3.4(b) provides that "Prisoners shall follow the instructions provided with the forms and complete the forms **using only one side of the page.**  Every section of the form must be fully completed and all information required by the form must be included."  (Emphasis in original).  LR PL P 3.4(c) provides that, "[a]fter completing the Court-approved form, the prisoner may attach additional pages containing additional information as permitted by the instructions on the form.  The information contained in any additional pages must specifically relate to the information provided in a designated section of the Court-approved form, must be permitted by the instructions and must be identified as supplementing the information contained in that section."  LR PL P 3.4(d) provides that "**[n]o more than five (5) typewritten pages or ten (10) legibly printed pages** may be attached to any Court-approved form unless accompanied by a Motion for Leave to file excess pages."  (Emphasis in original).  LR PL P 3.4(e) provides that "[a]dditional pages shall be printed or typed . . . [on] only one side of the page" and that "[t]he printing or typing shall be no smaller than the standard elite type and shall contain numbered paragraphs which correspond to the numbered paragraphs in the Court-

approved form.  The typing or printing on each page shall be double-spaced."  LR PL P 5 provides that "[i]f a pleading received by the Court does not comply with the requirements of these Rules, it will be stricken from the docket by the Court and returned to the prisoner."

Further, LR PL P 11(b) provides that, "Unless otherwise ordered by the Court, memoranda and other materials in response to a dispositive motion by the opposing party shall be filed within twenty-one (21) calendar days form the date of service of the motion. Memoranda filed in response to a motion **shall not exceed twenty-five (25) pages.**" (Emphasis in original).  Further, LR PL P 11 provides, "**Failure to comply with the page limitations set forth in these Rules will, upon Court order, result in the entire document being stricken from the docket.**"  (Emphasis in original).

Plaintiff's response [ECF No. 70] is single spaced, and exceeds the page limitation by 40 pages. Although the response [ECF No. 70] was accompanied by a separate motion [ECF No. 64] to file excess pages, the reasons provided to exceed the page limitation are not compelling.  Accordingly, the undersigned recommends that Plaintiff's response [ECF No. 70] be stricken from the record for failure to comply with the Local Rules of Prisoner Litigation Procedure.

## V.  RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's complaint [ECF No. 1] be **DISMISSED  WITH PREJUDICE** as to A. Wilson, Anderson, and United States of America.   The undersigned **RECOMMENDS** that Plaintiff's complaint [ECF No. 1] be **DISMISSED  WITHOUT PREJUDICE** as to Saad, Sligar, Harman, Hudgins, Connors, R. Wilson, Miller, Clem, Massey, John Doe, John / Jane

Does.

It is also **RECOMMENDED** that Defendants' motion to dismiss [ECF No. 45] be **GRANTED**.

It is further **RECOMMENDED** that Plaintiff's motions to compel [ECF No. 36], to strike [ECF No. 62], for leave to file excess pages [ECF No. 64], to compel [ECF No. 66] be **DENIED**, and that Plaintiff's motion for joinder [ECF No. 67] be **DENIED as PREMATURE**.

It is further **RECOMMENDED** that Defendants' motion to strike response [ECF No. 79] be **TERMINATED** as **MOOT**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court.

The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:     June 9, 2021

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE